UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

**CIVIL ACTION NO. 09-82-JBC**

**RONALD E. COX,** **PLAINTIFF,**

**V.** **MEMORANDUM OPINION AND ORDER**

**CIGNA GROUP INSURANCE,** **DEFENDANT.**

This matter is before the court upon the parties' cross-motions for judgment on the administrative record (R. 17, 20). For the reasons discussed below, the court will grant the plaintiff's motion in part, deny the defendant's motion, and remand the matter to the plan administrator for a full and fair inquiry of the plaintiff's eligibility for disability benefits.

**I.     Background**

Claimant Ronald E. Cox is a fifty-five-year-old male who was employed as a repairman and tradesworker for nearly twenty-four years at Philips Lighting Company ("Philips"), a part of Philips Electronic North American Corporation. AR 141; R. 17, at 2. He worked at Philips from November 1983 until he left on November 2, 2007, because "he became incapacitated from neck, shoulder, back, hip and leg pain which prevented him from carrying out the exertional requirements of his job." AR 17, at 2. Cox did not graduate from high school but has received a GED. *Id.* at 1. As a tradesworker, Cox installed, repaired, constructed, and

1

maintained plant facilities and equipment; fabricated and installed frames and supports for tanks, kilns, and other equipment; and collected pressure, temperature, kilowatt, and other data from meters.  AR 98.  Tradeswork also involved considerable manual effort, and Cox handled fifty to eighty pounds from twenty-five to fifty percent of his shift.  AR 99.

Cox was covered by a Group Life Insurance Plan (the "Plan") that Philips held with the Life Insurance Company of North American (LINA).[1]  AR 173-230.  The Plan is governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq*.  R. 20, at 1.  This dispute arises from the denial of Cox's benefits under the Plan.

Cox alleges that he became disabled as a result of debilitating back pain on or about November 2, 2007 (Compl. ¶ 5), and he filed a claim for Total and Permanent Disability benefits (TPD) under the Plan on April 1, 2008 (AR 139-46).  Under the terms of the Plan, "An employee is permanently totally disabled if, because of Injury or Sickness, he or she is determined by the Insurance company to

---

[1] The plaintiff incorrectly named Cigna Group Insurance as the defendant in this action, when Life Insurance Company of North America (LINA), a CIGNA subsidiary, actually administered the Philips Plan.  The cover page of the Philips Group Policy (AR 173) bears the name and address of LINA, not CIGNA.  In fact, the documents and correspondence the plaintiff mistakenly believes to be from CIGNA contain this provision: "'CIGNA' and 'CIGNA Group Insurance' are registered service marks and refer to various operating subsidiaries of CIGNA Corporation.  Products and services are provided by these subsidiaries and not by CIGNA Corporation.  These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company."  *E.g.,* AR 7.

be unable to do any work for wage or profit for the rest of his or her life." AR 211.

In evaluating Cox's initial claim, Nurse Case Manager Jean Kozik-Kulis sought and received additional information from Dr. Cindy Thoroughman, Cox's chiropractor since 2001, regarding the restrictions she placed on Cox. AR 82-87. Based on Kozik-Kulis's subsequent evaluation of Cox's file (AR 76-78) and a review of Cox's medical records, LINA denied Cox's claim on May 13, 2008 (AR 62-65).

Cox filed his first appeal on July 7, 2008 (AR 56), adding a letter from Dr. Brian Ellis, the Philips Lighting plant physician who had treated Cox since 2001, and the report from his June 23, 2008 MRI (AR 47-48). LINA engaged Medical Director Dr. Norton Hall to perform a medical record review (AR 44), and an in-house vocational expert conducted a Transferable Skills Analysis (AR 43). LINA upheld the denial of Cox's TPD benefits, for the same reasons given in the first denial, on August 21, 2008. AR 41-42.

Cox retained counsel to help him file his second appeal on November 25, 2008 (AR 29-31), which included restriction letters prepared by Cox's attorney and filled out by Drs. Thoroughman (AR 36-38) and Ellis (AR 32-34). After a review by Dr. Charles McCool (AR 22), the defendant denied Cox's claim for TPD for a third and final time on January 27, 2009, on the grounds that the medical evidence did not support total disability as defined in the policy (AR 19-20).

Having exhausted administrative remedies, Cox filed suit in Boyle Circuit Court seeking disability benefits from November 2, 2007; pre- and post-judgment

interest pursuant to the terms of the Plan; costs; and attorney's fees. Compl. at 3-4. That action was removed to this court on March 11, 2009. R. 1.

## II.    Legal Analysis

The parties agree that the Plan's language[2] grants LINA discretionary authority to determine eligibility for benefits. R. 17, at 2; R. 20, at 15. Accordingly, LINA's decision is reviewed under the highly deferential "arbitrary and capricious" standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Evans v. Unumprovident Corp.*, 434 F.3d 866, 875-76 (6th Cir. 2006) (quoting *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998)). Under this standard, the defendant's decision to deny Cox disability benefits will be upheld if "it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)).

"A court's review for arbitrary and capricious decision-making 'inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues.'" *DeLisle v. Sun Life Assurance Co. of Can.,*

---

[2]The Plan states: "For plans subject to . . . (ERISA), the Plan Administrator of the Employer's employee welfare benefit plan (the Plan) has appointed the Insurance Company as the Plan Fiduciary under federal law for the review of claims for benefits provided by this Policy and for deciding appeals of denied claims. In this role the Insurance Company shall have the authority, in its discretion, to interpret the terms of the plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact." AR 219.

4

558 F.3d 440, 446 (6th Cir. 2008) (quoting *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)).  Cox challenges the defendant's denial of his LTD claim because he believes the defendant acted arbitrarily and capriciously, specifically because it disregarded the opinions of Cox's two treating physicians.  Because LINA's position was not based on a comprehensive review of Cox's medical records, it was arbitrary and capricious.

The first denial letter LINA sent Cox merely recounted the technical contents of Cox's various medical reports, without any meaningful analysis.  AR 62.  *See Elliott v. Metro. Life. Ins. Co.*, 473 F.3d 613, 619 (6th Cir. 2006) (comparing a similar letter, which the Sixth Circuit found was not a *reasoned* denial, to a court decision that merely said "affirmed" or "reversed").  In the summary of the medical evidence that LINA reviewed (AR 62-63), the results of Cox's lumbar spine MRI on February 6, 2007, which revealed a disc bulging at L3-4, L4-5, and L5-S1, facet hypertrophy resulting in mild to moderate spinal stenosis, and neuroforaminal stenosis (AR 71), are misquoted.  And LINA did not even mention the results of the cervical spine MRI performed on Cox the same day.  AR 72.  Also notably absent from the denial letter is any mention of the Medical Request Form (AR 108) and Physical Ability Assessment Form (AR 109-110), upon which Dr. Thoroughman responded to questions about Cox's physical restrictions as follows,

> Mr. Cox is unable to work without injuring himself. . . . He is unable to lift or pull, cannot stand, sit or walk long periods of time.  He is unable to carry or squat due to his loss of feeling in the left leg and he is very unstable, constantly trip and catch self on wall or doorways.

AR 108.

Moreover, LINA dismissed all of the evidence of Cox's disability in one sentence: "According to the medical information on file, the medical evidence submitted does not support an impairment to preclude you from working for wage or profit for the rest of your life as defined in the policy." AR 62-64. LINA did not explain, for example, why its conclusion that Cox was not disabled differed so dramatically from that of Dr. Ellis, who had treated Cox since 2001. Dr. Ellis imposed significant physical limitations on Cox (AR 146) and wrote on a prescription pad that Cox "[i]s unable to perform function of the job requirements at Philips Lighting. This is a permanent situation and will not improve enough for him to return." (AR 147). Nor did LINA address Dr. Thoroughman's opinion that Cox had severe multilevel degenerative disc disease and multilevel degenerative joint disease and that "Mr. Cox truly deserves his disability status to prevent further loss of his ability to function." AR 149-50. LINA also wholly ignored Dr. Thoroughman's observations of Cox's structural weaknesses and abnormalities, chronic pain, and difficulty performing daily duties because of numbness in his left leg and loss of balance. AR 148.

Although a plan administrator like LINA "[is] not obligated to accord special deference to the opinions of treating physicians," and it does not have to explain why it credits "reliable evidence that conflicts with a treating physician's evaluation," LINA cannot "arbitrarily refuse to credit [Cox's] reliable evidence,

6

including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 834 (2003).  The only reliable evidence that plausibly conflicted with the consistent evaluations of Cox's two long-time treating physicians was the summary of an ERGOS Functional Capacity Evaluation (FCE) conducted at LINA's request on October 10, 2007.  AR 152-153.  The FCE summary indicated that, although Cox did not meet the physical requirements for work as a tradesman, "[m]uch of his performance . . . was into the Medium and Heavy PDL [physical demand level] as defined by the U.S. Department of Labor."  AR 152.  The FCE evaluator also concluded that "[t]here were no objective physiological data to support high intense-unbearable pain."  AR 153.  While LINA did not have to explain why it credited the FCE, it was obliged to provide some explanation for denying Cox's claim, which it did not; LINA merely dismissed his claim in one conclusory sentence.  *See Elliott*, 473 F.3d at 619-21.

   LINA's second denial letter to Cox, on August 21, 2008, included a one-paragraph explanation of its decision to uphold its prior denial because there was not *any* medical evidence of a severe impairment.  AR 41-42.  It paraphrased Cox's file review by in-house Medical Director (MD), Dr. Hall, who apparently disagreed with the significance of Cox's MRIs and opined that his "medical record review fails to reveal documented significant quantified clinical findings to support the imposed restrictions . . . [and two records] are devoid of measured or objective findings that are significant."  AR 44.  The brevity of Dr. Hall's analysis (roughly forty words),

7

combined with the uncertainty of what records Dr. Hall reviewed (he specifically mentions only two documents from Dr. Ellis and "the MRI's"), suggests that LINA's denial, based on Dr. Hall's review, was not reasoned. *See Elliott*, 473 F.3d at 619 (noting that the administrator's denial could be "reasoned" only if the file review it relied upon provided an adequate basis to conclude that the claimant could not perform her occupation despite her medical condition). While the "arbitrary and capricious" standard is extremely deferential, it is not a rubber stamp for the administrator's determination. *McDonald*, 347 F.3d at 172.

Additionally, a mere file review by a qualified physician may raise questions about the thoroughness and accuracy of LINA's denial and should be considered in determining whether the defendant acted arbitrarily and capriciously in giving greater weight to the opinion of a consulting physician. *See Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295-96 (6th Cir. 2005) (pointing out, however, that a mere file review is not "inherently objectionable"). That Cox's two treating physicians physically examined Cox over many years, but Dr. Hall may not have had even the benefit of complete medical documentation on which to form his opinion, renders Dr. Hall's limited commentary and failure to discuss contrary treating physicians' findings even more problematic. *See Kalish v. Liberty Mut./Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 509-10 (6th Cir. 2005). Where, as here, conclusions from a file review "include critical credibility determinations regarding a claimant's medical history and symptomology, reliance on such a [file] review may

8

be inadequate." *Calvert*, 409 F.3d at 297 n.6.

LINA's letter cites the lack of "any documented motor, strength, sensory, or range of motion deficits, and no abnormalities noted with your upper or lower extremities" as justification for the second denial.  AR 42.  But it does not address either a letter from Dr. Thoroughman dated May 7, 2008, which detailed Cox's difficulties walking, balancing, and driving, or an Interoffice Memo from the LINA employee who conducted a transferable skills analysis (TSA) and determined "no transferable occupations would be identified" for Cox based on his condition.  AR 43.  In hindsight, the defendant justifies not considering the TSA on the basis that "the restrictions and limitations imposed were unsupported."  R. 20, at 18 n.4. The denial letter also fails to mention the Disability Questionnaire and Activities of Daily Living form LINA provided and Cox completed on April 21, 2008, on which Cox explained he could not work in his own or any occupation "because of the chronic pain and numbness in back, neck, shoulders, and legs.  Lose balance. Structural weakness."  AR 100-103.

The third and final denial of Cox's claim for TPD came on January 27, 2009. AR 19-20.  That letter informed Cox that his medical information was again reviewed by an MD.  *Id.*  Dr. McCool wrote a roughly thirty-word synopsis that indicated he looked at an MRI of Cox's, although it is not clear which one, and reviewed letters from Drs. Thoroughman and Ellis, although he did not specify which particular correspondence from Cox's physicians he read.  AR 22.  Dr.

9

McCool determined that the "MRI shows only degenerative changes and not even actual HNP. [Cox] is basically suffering from mechanical back pain." *Id.* In fact, none of Cox's treating physicians alleged, and Cox did not base his claim for disability on complaints of, herniated nucleus pulposus ("HNP"), better known as a herniated disc.

LINA provided some reasoning for denying Cox's claim a third time, specifically that when Cox was seen for chronic low back pain by Dr. Ellis on January 28, 2008, "the office note does not give any range of motion deficits and gives no strength testing to show a functional loss." R. 20. The only other documents referenced were Cox's February 6, 2007, MRI and, curiously, a May 7, 2008, letter from Dr. Thoroughman that the second denial letter did not mention, although the defendant possessed that letter prior to that time. AR 19-20. Dr. Thoroughman's correspondence detailed the "progressive and degenerative" nature of Cox's condition, including structural and soft tissue damage; his continued loss of balance, necessitating the use of a cane; left leg numbness; difficulty traveling in a car and standing from the seated position; and her concern that he posed a safety risk to himself and others if he continued working. AR 67-68.

Based on "this information," which was only a portion of the documentation Cox provided, LINA denied Cox's claim for TPD, "since the medical evidence submitted does not support your total disability as defined by your policy." AR 20. The third denial failed to mention the restriction letters submitted by Cox's treating

physicians in October 2008 (AR 32-34, 36-38)[3], and an August 29, 2008, letter from Dr. Ellis disagreeing with LINA's second denial and explaining that Cox had chronic pain, significant weakness in the right lower leg, and decreased reflexes in the left lower leg (AR 35). LINA also recited the precise language from past denials and concluded that, "[a]lthough you have complaints of pain, there are no exam findings or test results to preclude you from performing in any occupation." AR 20.

The role of this court is "to review the basis for the decision actually made by the plan administrator, not to provide an adequate basis where none was offered." *Glenn*, 461 F.3d at 672. Even if LINA's determination could be supported by the medical evidence, the actual explanations provided raise several unanswered questions regarding how LINA reached its decision. In a disability review process spanning more than a year, LINA provided only a few short paragraphs explaining why it denied Cox's three claims, the majority of which was recitation of the policy language. Neither of the consulting physicians, upon whose opinions LINA relied, specifically addressed the findings of Cox's treating physicians. Although LINA did not dispute that Cox was unable to continue in his

---

[3] Although the two physicians did not impose identical restrictions on Cox, they agreed that he only had the capacity to lift and frequently lift and/or carry less than ten pounds, which was the lowest-capacity category listed on the form, and believed Cox could stand and/or walk a total of less than two hours in an eight-hour work day. AR 32, 36. Dr. Thoroughman also noted that Cox was capable of sitting for only thirty minutes, and he had limited ability to reach, handle, finger, feel, and see. AR 37. Dr. Ellis did not impose those restrictions on Cox, but agreed with Dr. Thoroughman that Cox could never climb, balance, stoop, kneel, crouch, or crawl. AR 33, 37.

11

position as a tradesworker at Philips, LINA never suggested work for wage or profit that it believed Cox could undertake, to preclude him from obtaining TPD benefits. LINA has not demonstrated that it engaged in a "deliberate, principled reasoning process," or that its decision was supported by substantial evidence. Because LINA's benefits denial was arbitrary and capricious, this matter will be remanded to the administrator for a full and fair inquiry.

## III.  Attorney's Fees and Costs[4]

Cox also requests that this court award reasonable attorney's fees and costs, which it can do in its discretion under 29 U.S.C. § 1132(g)(1). The decision of whether to award attorney's fees in an ERISA action is ordinarily based on five factors:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 936-37 (6th Cir. 1996) (citing *Sec'y of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985)).

Although LINA did not comprehensively review Cox's medical records, the court does not find any indication that Cox's benefits were denied in bad faith. *Cf.*

---

[4]Although the plaintiff did not proffer arguments in support of his request for costs and attorney's fees in his summary judgment motion, because he requested such relief in the complaint (Compl. at 4), the court will address it here.

position as a tradesworker at Philips, LINA never suggested work for wage or profit that it believed Cox could undertake, to preclude him from obtaining TPD benefits. LINA has not demonstrated that it engaged in a "deliberate, principled reasoning process," or that its decision was supported by substantial evidence. Because LINA's benefits denial was arbitrary and capricious, this matter will be remanded to the administrator for a full and fair inquiry.

## III.  Attorney's Fees and Costs[4]

Cox also requests that this court award reasonable attorney's fees and costs, which it can do in its discretion under 29 U.S.C. § 1132(g)(1). The decision of whether to award attorney's fees in an ERISA action is ordinarily based on five factors:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 936-37 (6th Cir. 1996) (citing *Sec'y of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985)).

Although LINA did not comprehensively review Cox's medical records, the court does not find any indication that Cox's benefits were denied in bad faith. *Cf.*

---

[4]Although the plaintiff did not proffer arguments in support of his request for costs and attorney's fees in his summary judgment motion, because he requested such relief in the complaint (Compl. at 4), the court will address it here.

*Moon v. Unum Provident Corp.*, 461 F.3d 639, 643-44 (6th Cir. 2006) (finding bad faith supporting an award of attorney's fees where defendant adopted the opinion of an interested physician who based his findings on selective information in the administrative record and did not examine the insured). Further, although an award of attorney's fees would likely deter some of LINA's arbitrary and capricious conduct, that justification is outweighed by other considerations which weigh against such an award. Cox's suit was fact-specific and intended only to confer a financial benefit upon himself, not to resolve significant legal questions. Finally, although it is not disputed that the defendant is able to pay an award of attorney's fees, such fees are not justified in this case.

### IV.   Conclusion

Accordingly, **IT IS ORDERED** that the plaintiff's motion for judgment on the administrative record (R. 17) is **GRANTED IN PART AND DENIED IN PART**. This court finds that the defendant's decision was arbitrary and capricious, and this action is **REMANDED** to the plan administrator for a decision in accordance with this order.

**IT IS FURTHER ORDERED** that the defendant's motion for judgment (R. 20) is **DENIED**.

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

Signed on February 24, 2010